The next case this morning for argument is 13-1142, Thomas v. Pippin. Thomas v. Pippin Mr. Thomas, whenever you're ready. Good morning, Your Honor. May it please the Court. This is a consolidated appeal from three related interference proceedings. And these interference proceedings were instituted on the request of Pippin nearly ten years after the original filing of their application. And after that, it took about eight years to get it through the Patent Office, at which point three interferences were declared and started on the interference process. These interferences were Pippin's chosen vehicle to challenge the Patability of Thomas' claims. There are some 200 claims and they span across seven different patents. Unlike a typical interference, these interferences do not really have a dispute as to who the first inventor is. But you're the junior party, right? There's no dispute on that? There's no dispute on that. And in fact, Pippin's application is prior to our application. And early on in the proceeding, we conceded that we did not invent the count, which is essentially derived from Pippin's case. So what's the essence of your argument here? Is it really a process argument that you had so much more to bring to bear and the Board, in its discretion, at least, took an unreasonable position in terms of the limitations it placed upon you? Essentially, yes. One problem is that we have a lot of claims, we have a lot of patents, and all these interferences showed up at the same time. Well, you conceded, did you not, that the Board has some ability to manage the docket and place some limitations on what you can submit and when you can submit it, correct? Correct. So why did they go, why did this, and the standard of review is? The standard of review we're relying on primarily is that there was legal error in the ways in which they managed the interferences. Well, you want to just focus us on the nub, I mean, what the worst offense was, what you think... Well, there's two primary areas that I think we can focus on. One is based on the patentability analysis underlying the de-designation motions. In our preliminary motions list, we requested, among other things, to de-designate all of our claims as not corresponding to the count, meaning that they would be patently distinct. When we did that, we presented the list of features that are in our claims. There was 113 measures that we grouped amongst the 200 plus claims to try to give some organization to let the court know these are the features in our claims that we can use solely to distinguish our various claims from the count. So you came up with 113, and is this the instance where they limited you to 40, or something like that? They limited us to 35. Pippin uses 40, I'm not sure what the difference is, but I don't think it's that relevant. So in each interference, there were three interferences. The first interference, we were approved on seven features. The second we were approved on 16, and the third we were approved on 12. And the board's orders with respect to the de-designation basically said those are the only things you can argue. So as we went on, we filed a motion to de-designate. Following the board's order, we argued just the features that we were approved on. From that, the board found that we did not carry our burden that they placed on us. Did the board give you some leeway in terms of coming back and asking for more under certain circumstances if you could make a case, or am I confusing this with another case? Yes. We got a second bite, so to say. Initially, I think we had 30 approved in total. Distributed across the three interferences. And then we went back for about 10 additional ones, but we were only approved for five. Was there some more open-ended safety valve in which the board said, if you have others that you think are materially different, come back in? I guess I'm thinking a little bit of the Ronald Katz case in this court from a few years ago, in which a district court said, there are 4,000 claims here. You've got to limit it. Limit it in the following way. And tell me if anything that I've left out is different. And this court said, that's fine, because there was a safety valve provision that said, if there's a material difference, you had the opportunity. And that's obviously a different context, but it feels somewhat similar. So I guess my question is whether the board provided that kind of safety valve opening to you. They didn't provide that type of safety valve. However, they did comment that essentially the understanding that they were using, or the rationale that they were using was that if you go back later and find that we did not give you an authorized feature for an independent claim, then you can come back and we'll see if we'll give you an additional one to deal with that independent claim. But that's not a real safety valve. That gets us to the level of, oh, you can argue at least one feature for your independent claims. What is your position as to what the board is allowed or not allowed to do? Is it your view that the board is required to entertain all 113 features that you initially wanted to put forward? And if it puts any limits or restraints on that, then you have a basis for appeal. Is that your view, or is it something more limited? It's hard to quantify what the view would be, because the features... Well, you're up here. It's kind of important for us to know what it is. I mean, if you're asking us to overrule and reverse the board here, you've got to give us a standard against which we have to evaluate its behavior. One standard is that being approved authorized, only one feature of independent claims is not enough. There are dependent claims that have different limitations that were included in the listing we provided. So if you're seeking some sort of relief, what are we supposed to say to the board? You have to entertain all? You have to entertain some? You have to apply a different standard in which you evaluate the merits? The standard they have to apply is they have to let us argue the patentability of our claims in accordance with the statute. And we think that means that the claims have to be considered as a whole. So they can't preclude us from arguing limitations of our claims. Any limitations? Any limitations. But on top of that, there are page limits to the motions, and the board would have discretion to modulate our response or motion using page limits, for example. Does it matter whether the ultimate merits issue is one of anticipation or one of obviousness in terms of how many limitations can be required for the board to examine? I don't think it makes a difference. In this particular case, the board conceded that our claims were not anticipated. Right. So it was a question of obviousness under our obviousness law, which now means application of common sense. And would it have been common sense for the board to be required to look at all, every one of the elements or limitations properly? Well, that seems to be required by 35 U.S.C. Section 103A that the claims must be considered for patentability purposes as a whole. As a whole. Right. But as a whole, not limitation by limitation. Well, claims have limitations, but isolated limitations and precluding discussion of other limitations would seem to violate statute. Before your time runs out, I want to turn to the double-patenting question. Sure. Briefly. The double-patenting situation also arose at the preliminary motions level. In this case, we proposed to file a motion for double-patenting. It was denied. So no motion was ever presented on that. So we're complaining about the board's denial of our ability to even present a motion. And the motion would have been based on the fact that we had earlier obtained a patent that had a claim that our motion would assert or cover the same invention. So we're not able to address that because the board decided in response to a conference call where these preliminary motions were discussed that a particular element of the count, called clock circuitry, presented a difference. So he denied our ability to present the motion. And why is that wrong on the merits? I thought it was awfully clear that in the count, the clock circuitry, what does not have to be in the microprocessor in the old claim 24 or something, it did, or the reverse, I don't remember. The reverse. The reverse, I'm sorry. So, I mean, why isn't that all by itself a sufficient basis for saying this just isn't the same invention for obviousness-type double-patenting? The reason is that double-patenting doesn't require the wording to be identical. It's whether or not the claim is covering the same invention. But this, I guess, didn't seem to me just a matter of wording. I mean, the location of the thing is different. Well, one says it's inside the earlier patent claim. The other one doesn't specify where it is on its face. Right. So it could be broader, in fact. You could put the clock circuitry. It requires claim construction to figure out what exactly that covers. Did you propose a claim construction? We proposed to file a motion for double-patenting. We didn't go into the details of what the specific arguments would be. We were only required to specify the type of relief we're seeking, and that was to file a motion for double-patenting. And we identified the claims of the earlier patent. If you want to save your rebuttal, why don't we turn to Mr. Lane? Sure. Thank you. May it please the Court, my name is Bill Lane. Together with Carolyn Shakin and Danny Huntington, I represent Pippin and Pippin's real party and interest in Intel. Let me make two points at the beginning of the argument. The first goes to the comment you made. Thomas has more than conceded he's a junior party. He's, in fact, conceded that Pippin has priority to the count, and that essentially means that Pippin is prior art and validating prior art to all of Thomas' claims. There's no substantive dispute about that. The second point on the substance, which we think is important, is this. On these de-designation motions, Thomas has not contested any of the substantive decisions the Board reached in its 60-some pages of opinions. For the claims that were addressed, he does not state it differently. He does not bring a single claim from the 262 claims to you that says the Board made an error, here's the reason it made an error, and we've been prejudiced as a result. Part of that goes to the process point that Mr. Thomas made. What happens actually below is the following. At page 82063, you'll see the preliminary motions, and they go both to this process question and to Judge Toronto's question on the 101 issue. I take the process portion first. The motions that set forth at 82605 is this long list of independent claims. Thomas, who was represented by counsel before the Board, said, we are going to address the independent claims and show you there is a distinguishing feature for each of them. That, of course, makes sense because if there's a distinguishing feature for each of them, then there necessarily is for all the dependent claims. Then there's this long, long list of features. The Board said that this doesn't provide notice to Pippin. It doesn't provide notice to the Board. We can't tell what your argument is. The Board explicitly said we could just deny you the right to bring the designation motion, but because you have conceded priority, that would mean game over for all 262 claims, so we're not going to do that. So they did ask him to limit himself during a conference and after a long break to 35. He came back later and said that there were additional claims, independent claims, that had limitations. The Board allowed him to go to 40. But a critically important fact is this. Having been allowed to go to 40 when they briefed the claims, they only addressed 12. They only addressed 12 of the 113, 12 of the 40 they were allowed to address. When the Board got to those claims, it applied obviousness to all of them. There was no claim of anticipation. Was it the 40 limit or whatever it was? Was that you choose the 40 or these 40? It was you choose the 40. Actually, it was a little bit more than this. It was you choose the 40. And if there are any other independent claims for which we don't have a limitation, come back to us and we'll allow you to address them as well. But the Board was addressing the independent claim limitations because that's the manner in which Thomas posed the motion below. And then having had the briefing on the 12, what the Board did is – if I step back for a second, the Board actually said more than you choose the 40. It said you can brief these independent features. When you do it, do more than just tell us that this isn't in the claim. Tell us what the closest prior art is. Tell us how you're different than the closest prior art so that we can make a determination. And what the Court will see if you go to the Board's opinion is they took each of the 12 features in three different opinions. They articulated the standard under KSR. They looked at the claims. They then took the independent features and they compared it not only to Thomas' disclosed prior art, but in several circumstances they were able to identify, in fact, closer prior art, either identifying Thomas' or Pippin's specifications or third-party prior art. And then for each of the different – these 12 features, found them to be not patentably distinct from the count. And so for those claims, those 12 features actually implicated 95 claims. There's no challenge to that substantive decision. So we would say on the process portion of this, it is an abuse of discretion standard, not a legal error. Now, there were, to be candid, two legal errors asserted, but I don't think either of them is correct. One was the burden of proof that was imposed upon them as a moving party was legally incorrect. That is the legally correct standard. There was a suggestion that there had been accorded to Pippin a presumption of validity. When you read the board's decision, you'll see that that's not true. Well, what is your view of the rule we should apply? Judge Taranto referred to the in-ray caps, which we applied in the claim construction case. Is that a similar rule in your view warranted here in order to evaluate whether or not they abused their discretion? I think it's comparable, Your Honor. I think that in order to determine whether they abused their discretion, you have to look at what they were presented with, and that's what's at A2605. Then you have to think about what that meant for Pippin in terms of notice to Pippin, but more importantly notice to the board. A laundry list of 113 features going to 262 claims doesn't tell the board what the arguments are. Are there page limitations in their rules of procedure, whatever, with respect to cases? There are, and actually in this case, the board gave more pages to Thomas in order to accommodate the different arguments they expected him to make. So the areas that could be legal errors, the burden of proof, the presumption of validity, the board decided correctly. The rest, we suggest, is addressed by the abuse of discretion, and it is like cash in the sense that the board's confronted with a problem, it's trying to focus on what will decide the issue. It worked with Thomas' counsel below to come up with a process or protocol that allowed you to focus on the most important issues to get them resolved. And I think, again, it's critically important that up to 40 he was allowed to address, he only addressed 12. And Thomas, in his briefing, has not come back to you and said, for the 12, here is the argument we would have made that they didn't consider that would have reached a different decision. For the other 28 features that were not addressed, he hasn't made that argument. And for any dependent claim, the 262, the record's devoid of any argument that that would have made a difference. And so I think it is an abuse of discretion. In this case, you have a statute, regulations, and standing orders, all of which are to define a procedure that will be commonsensical, but also not an invitation to error for the board. The procedures they, in fact, have adopted are actually more robust than in many district courts that you have today. Here, the motions were previewed, the guidance was provided on how to present it, and multiple opportunities were made to come back, and that's not an abuse of discretion. Can you clarify a little bit, focus very specifically on the question of dependent claims? Right. When in this process was there discussion, I guess initially from Thomas' side, if ever, we think it's important to be able to address dependent claims, and he was told no, or what? I think the first time is for the court here, not below. If the court considers, I think it's A2065, and it's the motion that goes to de-designation that's followed by the long list of features, you'll see that Thomas is the one who characterizes his motion as going to the independent features. And I ask the question myself that Your Honor may be asking, well, the dependent claims are necessarily going to be narrow. Is that going to be something that would be easier to distinguish from the count? But there's another logic working, which is, if you can break free any of the claims based upon the independent claims being tactfully distinct, you necessarily break free all the dependent claims. So I think what happened here, Your Honor, is Thomas' counsel below made a choice. And you'll see when you look at the, I think it's the second sentence of that motion, its description, they explicitly say we're focusing on the independent claims. And there's a good reason for that as a matter of logic. So I take it that you're saying the board never said, despite your request, you may not focus on dependent claims. Right, and if they had come back and said, well, we have five dependent claims. When you include all the limitations, they're patently distinct. That question was never asked. The board was doing everything it could to accommodate and get to the merits of the decision. If I could turn really quickly to the 101 question. Again, the motion is critically important because when you look at, and this is at A2603, when he describes his motion, his motion is that the count, claim 34, is not patently distinct or patentable over claims 23 and 24 of the 047 patent. Now, again, the board did two things and gave Thomas the benefit of the doubt. It made the comparison to 34 and 24 and said the scope on its face is different. In one sense, 34 is broader. In one sense, it's narrower, focusing on the clock circuitry and the fan. It also addressed the argument to put claims 23 and 24 together and said there's no precedent for this. And there's a good reason for that. Combining limitations like that is closer to obviousness double patenting. But we have filed terminal disclaimers, so obviousness double patenting wasn't in play. But the board considered both. But ultimately, we would suggest it doesn't matter because of the line of cases from this court, Perkins v. Kwan and all of the progeny, which says it doesn't matter. If you've determined that the claim or the count is not patentable to one party pipit, that doesn't mean you don't reach the issue of priority. And there's a good reason for this. Everything that's been braced to the court is an effort to ensure that if someone files a claim or gets a claim, but it has been invented by someone else, you don't get a patent. And that's what's operating here. And in fact, all of the law that's been braced to you, the Perkins case, which says even if it's unpatentable to the senior party, you can still reach the issue of priority. It's because someone else has done it first. We don't want a patent to issue. And that's why Perkins v. Kwan and all the cases that hold the same to the same make this argument irrelevant. Even if it were not relevant, irrelevant, it would be incorrect on its face. And then I think what the court would have to consider is what is Thomas saying is the consequence of that? And it's really, it's three building blocks, each of which is faulty. The argument is, well, there's a jurisdictional issue, which we didn't waive. The jurisdictional issue, it's not a jurisdictional issue in our view, it's very brief, and it certainly hasn't been waived. It's based upon this 101 argument, which is just on the merits incorrect. But if we were correct on that, then we went under section 135A and 135B. And if all the court does is look at 135A and 135B, has the board correctly determined we literally satisfy both? Thank you. Thank you. Mr. Thomas, coming back to the question that our presiding judge kept trying to get you to focus particularly on, which is what should the board have done to avoid engaging in an abuse of discretion? Is it not the case that the board gave you 40 of these limitations, but you only came back with 12? In which case, can you argue that 40 was not a reasonable accommodation? Well, the whole premise of the 40, which our number is 35, not 40, but. 35 or 40. Still, there's more than 12. Right. In the end of the day, we filed our due designation motions operating in the confines of the ones that were authorized. In our list, we never specified of the 113 that they were only for independent claims. If you look at the list, there's tons of independent claims associated with it. So that idea is incorrect. What we did was we tried to present the limitations in some groupings. Because across the patterns, similar features show up. So in the end of the day, the ones that were authorized, we looked at those. And we evaluated which ones we could best present. And those, we filed our motions within the page funders. And if we go back, if we're permitted to go back and have the board give us leeway to argue all our limitations so that our claims can be evaluated as a whole, we'll have to do the same thing. Hopefully, we'll have the 113. We'll look at which claims we can argue within the page funders. And we'll present the arguments. So in addition to the limits of kindness. Time has expired. So if you want to have a final thought for us. We conceded that we did not invent the count. We never conceded that our claims were not packable with the count. And we had an additional argument associated with the de-designation. That is that the case law cited in the Pippin brief does not support the notion that we, the patentee, will not be entitled to some sort of assistance by the presumption of validity under 282. This concludes the argument. I thank both counsel. The case is submitted.